23005

Susan G. HENDERSON, Respondent-Appellant v. J. Christopher
HENDERSON, Appellant-Respondent.

(379 S. E. (2d) 125)

Supreme Court

*Ken Suggs* and *Mike Kelly*, of *Suggs & Kelly, Lawyers, P.A.*, Columbia, *for appellant-respondent.*

*C. Dixon Lee, III*, of *McLaren & Lee*, and *Harvey L. Golden*, of *Law Offices of Harvey L. Golden, P.A.*, Columbia, *for respondent-appellant.*

Heard Dec. 9, 1988.

Decided April 24, 1989.

FINNEY, Justice:

This is an appeal from a family court order. Both parties appeal the court's construction of their separation agreement (agreement). In addition, appellant-respondent, J. Christopher Henderson, appeals on issues of alimony, child support, and attorney fees; and respondent-appellant, Susan G. Henderson, appeals the court's refusal to hold Mr. Henderson in contempt. We affirm in part, reverse in part and remand.

The parties were married on December 30, 1972. During the marriage they had one child. Subsequently, they separated and entered into a separation agreement on issues of custody, visitation, child support, alimony and property division. Ms. Henderson obtained custody of their three-year-old child. The agreement was approved by the family court and merged into a Final Decree of Divorce on October 23, 1980. At this time, Ms. Henderson was employed as a school teacher and Mr. Henderson as an attorney.

Ms. Henderson instituted this action on August 28, 1986. She sought an order holding Mr. Henderson in contempt, enforcement of a provision of the agreement which requires Mr. Henderson to annually furnish her with a copy of his federal income tax return, an increase in child support, enforcement of alimony provisions, recovery of alimony arrearages, attorney fees and costs. Mr. Henderson filed responsive pleadings in which he sought, among other things, recovery or offset of alleged alimony overpayments, a reduction in alimony, elimination of the requirement that he furnish Ms. Henderson copies of his federal income tax returns, attorney fees and costs.

The family court ordered Mr. Henderson to pay $15,316.45 alimony arrearages, make monthly alimony payments of $1,634.87, provide $350.00 per month child support, furnish Ms. Henderson copies of his federal income tax returns for 1986 and each year thereafter, and pay $16,200.00 in costs and attorney fees to Ms. Henderson's attorneys.

## I. INTERPRETATION/CONSTRUCTION OF THE SEPARATION AGREEMENT

Mr. Henderson challenges the family court's determination that his "net earnings," at the time of the agreement, were $1,455.15 per month and contends that the court erred by refusing to allow him to present evidence that his "net earnings" were other than as set forth in the agreement. Questions relating to the construction, operation and effect of separation agreements are governed by the same general rules and provisions applicable to other contracts. Annot., 79 A. L. R. (2d) 612 (1961).

With regard to monthly net earnings, the agreement states:

> The Husband shall pay to the Wife as alimony the sum of Three Hundred ($300.00) Dollars per month, commencing on the 1st day of January, 1980, and on the first day of each month thereafter. This rate of alimony is based upon monthly net earnings of the Husband as of the time of this agreement of One Thousand Four Hundred Fifty-Five and 15/100 ($1,455.15) Dollars per month. In the event at any time the net earnings of the husband is increased above the base amount of One Thousand Four Hundred Fifty-Five and 15/100 ($1,455.15) Dollars, the Husband agrees to pay to the Wife, in addition to the alimony above provided for, a sum equivalent to 40% of any increase in net earnings up to a total monthly alimony of Two Thousand ($2,000.00) Dollars. In the event monthly alimony reaches the sum of Two Thousand ($2,000.00) Dollars per month, the Husband agrees to pay to the Wife in addition to the Two Thousand ($2,000.00) Dollars ali-

mony per month, a sum equivalent to 20% of any increases up to a maximum monthly alimony of Twenty-Five Hundred ($2,500.00) Dollars.

This provision makes clear that the parties intended the monthly "net earnings" figure of $1,455.15 to serve as the basis for Mr. Henderson's initial alimony payments of $300.00 per month. Further, subsequent increases in alimony payments were to be determined based upon increases in Mr. Henderson's income beyond $1,455.15. Plain and unambiguous language appearing in a written document may not be contradicted by the use of extrinsic evidence. *Stanaland v. Jamison*, 275 S. C. 50, 268 S. E. (2d) 578 (1980). This portion of the agreement is clear and unambiguous. The family court properly refused to allow evidence that Mr. Henderson's monthly "net earnings" were other than as set forth in the agreement.

■ Ms. Henderson contends the family court erred by allowing deductions of income, self-employment and/or FICA taxes from Mr. Henderson's gross income. The agreement specifies that Mr. Henderson's "net earnings" are "to be determined by subtracting from his gross earnings all expenses incurred in the earning of the gross income which expenses are allowable deductions on the tax return of the husband filed with the Internal Revenue Service." According to the family court, net earnings are to be determined by subtracting the following from Mr. Henderson's gross income: (a) state and federal income taxes; (b) self-employment and/or FICA taxes; and (c) actual business expenses incurred by Mr. Henderson in earning gross income.

■ When the language of a separation agreement is susceptible to more than one interpretation, the intention of the parties must be ascertained. *Langston v. Niles*, 265 S. C. 445, 219 S. E. (2d) 829 (1975). The family court allowed presentation of evidence by both parties regarding their intention of what constitutes "expenses incurred." From the agreement's inception, Mr. Henderson deducted state and federal income taxes and self-employment and/or FICA taxes in calculating the "net earnings"

upon which he based his alimony payments. Ms. Henderson never complained of these deductions until commencement of this action. The construction which the parties gave the agreement by their conduct and actions before any controversy arose as to the meaning of the agreement is entitled to great weight. 24 Am. Jur. (2d), *Divorce And Separation*, § 838 (1983). It is clear form the construction actually given by the parties prior to this controversy that deduction of income taxes and self-employment and/or FICA taxes was contemplated at the time of the agreement.

Ms. Henderson also contends the family court committed error in computing alimony arrearages. According to Ms. Henderson, the court's deduction of income and FICA taxes from Mr. Henderson's gross income resulted in an improper determination of alimony arrearages. In view of the language of the agreement and the conduct of the parties, we hold that these deductions are proper. The family court did not err by awarding alimony arrearages computed after deductions of income, self-employment and/or FICA taxes from Mr. Henderson's gross income.

We find no error in the family court's determinations and interpretations with regard to "net earnings" or arrearages due Ms. Henderson.

## II. MODIFICATION OF ALIMONY

Mr. Henderson argues that his alimony payments should be reduced because his health has deteriorated since the divorce. Mr. Henderson suffered a heart attack in 1982 and has since suffered other heart attacks.

Modification of periodic alimony awards are appropriate upon a showing of changed circumstances. *Brockington v. Brockington,* 277 S. C. 304, 286 S. E. (2d) 381 (1982). The fact that a spouse who is obligated to make support payments incurs some medical disability, standing alone, is not sufficient to meet the change of circumstances test. *Appeal of Brown,* 288 S. C. 530, 343 S. E. (2d) 649 (Ct. App. 1986).

The family court considered the question of changed circumstances and considered the effect of Mr. Henderson's health on his ability to earn income. Since approval and merger of the agreement, Mr. Henderson's income has increased from $30,000 a year to over $100,000 in 1985; over $85,000, plus disability payments in 1986; and to an estimated $75,000, plus disability payments totaling approximately $15,500 in 1987. Additionally, the agreement expressly requires Mr. Henderson to maintain provisions for disability payments to secure his alimony and child support obligations. At the time of the family court hearing, Mr. Henderson was receiving disability income of $1,291 per month in addition to income from his law practice.

Mr. Henderson also argues that Ms. Henderson's economic status has substantially improved since the divorce and that this improvement constitutes changed circumstances which justify a reduction in his alimony obligation. In 1985, Ms. Henderson resigned her teaching position and began to manage investment properties in which she is an investor. For the most part, Ms. Henderson acquired interests in these properties with virtually one hundred percent financing and her income has not increased as a result of these investments.

We agree with the family court that there are insufficient changed circumstances to sustain a reduction in Mr. Henderson's alimony obligations.

### III. CHILD SUPPORT

Mr. Henderson also challenges the family court's modification of his child support obligation. The separation agreement requires Mr. Henderson to pay $250 per month as child support, which the family court increased to $350 per month.

Family courts are empowered to modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability. *Moseley v. Mosier*, 279 S. C. 348, 306 S. E. (2d) 624 (1983), citing *Smith v. Smith*, 275 S. C. 494, 272 S. E. (2d) 797 (1980).

The family court modified the child support award after considering the increased needs of the child and Mr. Henderson's financial ability. We find no error.

## IV. CONTEMPT

Ms. Henderson asserts the family court erred by refusing to hold Mr. Henderson in contempt for failing to furnish annual copies of his federal income tax return, as required by the agreement, and for failing to pay the appropriate amount of alimony.

Contempt results from the willful disobedeience of a court order. *Moseley v. Mosier, supra.* Before a court may find a person in contempt, the record must clearly and specifically refect the contemptuous conduct. *Curlee v. Howle*, 277 S. C. 377, 287 S. E. (2d) 915 (1982). Once a moving party makes out a prima facie case of contempt by pleading the order and showing its noncompliance, the burden shifts to the respondent to establish his defense and inability to comply. *Means v. Means*, 277 S. C. 428, 288 S. E. (2d) 811 (1982). A finding of contempt rests within the sound discretion of the trial judge. *Haselwood v. Sullivan*, 283 S. C. 29, 320 S. E. (2d) 499 (Ct. App. 1984).

Mr. Henderson provided his 1980 income tax return to Ms. Henderson in 1983, and did not provide returns for 1981 through 1985. According to Mr. Henderson, he did not supply the returns because he filed jointly with his new wife, who wanted her financial privacy protected. As an alternative means of complying with the order, Mr. Henderson provided employer affidavits and suggested other methods of income verification.

In view of Mr. Henderson's health and his efforts to supply alternate means of income verification, we hold that the family court did not abuse its discretion by refusing to find Mr. Henderson in contempt.

## V. ATTORNEY FEES

Mr. Henderson contends the family court erred by awarding attorney fees to Ms. Henderson's attorneys.

Although the family court granted a motion to conduct a separate hearing on the issue of attorney fees, the court made an award of $16,200 without holding this hearing. As a result, both parties were denied an opportunity to present evidence on this issue. We reverse the court's decision regarding attorney fees and remand for a hearing.

Based on the foregoing, the family court order is affirmed with regard to construction of the separation agreement, alimony, child support and contempt; and reversed and remanded on the issue of attorney fees.

Affirmed in part; reversed in part; and remanded.

GREGORY, C. J., and HARWELL, CHANDLER and TOAL, JJ., concur.