552 S.E.2d 329

**Roger D. HASELDEN, Appellant,**

v.

**Joanne F. HASELDEN, Respondent.**

**No. 3378.**

Court of Appeals of South Carolina.

Heard June 4, 2001.

Decided Aug. 6, 2001.

Rehearing Denied Sept. 19, 2001.

Thomas M. Neal, III, of Columbia;  and Charles Owen Nation, II, of Georgetown, for appellant.

Elizabeth Rhoad Myrick and Mary Perrin O'Kelley, both of Rosen, Goodstein & Hagood, of Summerville, for respondent.

Guardian ad Litem:  William S. Jacobs, of Georgetown.

HUFF, J.:

Roger D. Haselden (the father) appeals from an order of the family court ordering him to pay two-thirds of the expenses of his minor child at Hidden Lake Academy (HLA), a private treatment facility located in Georgia. He also appeals from a subsequent order of the family court holding him in contempt for failure to comply with the court's order to pay the expenses. We affirm in part, reverse in part and remand.

## *FACTUAL/PROCEDURAL BACKGROUND*

The father and Joanne F. Haselden (the mother) were divorced by order of the family court in October of 1993. Pursuant to the divorce decree, the mother was granted custody of the parties' child, Gabrielle Gadson Haselden, and the father was ordered to pay bi-weekly child support in the amount of $220.00 ($476.67 per month). The family court further ordered the father, who earned 82% of the family's income, to pay two-thirds of the child's medical expenses, excluding extraordinary medical expenses.

In May of 1998, the mother enrolled Gabrielle in Hidden Lake Academy, a therapeutic boarding school for children diagnosed with Oppositional Defiant Disorder.[1] The cost of tuition at HLA was, at all times pertinent to this case, $4,150.00 per month.

On July 14, 1998, the father commenced this action seeking, among other things, a declaratory judgment relating to his responsibility for expenses incurred due to the placement of the child at HLA. Specifically, the father sought to have the child's treatment at HLA judicially declared an extraordinary medical expense, with the mother bearing full responsibility for the payment of the cost of the treatment. The father also sought a change of custody, and access to the child. He also moved for temporary relief, seeking essentially the same relief sought in the complaint. The mother counterclaimed, seeking an increase in child support, an order requiring the father to contribute towards the expenses of the therapeutic boarding school, and an award of attorney fees. She also filed a motion

---

1. Gabrielle was to graduate from Hidden Lake Academy in December of 1999.

for temporary relief, seeking essentially the same relief requested in her pleadings.

On September 8, 1998, the family court held a hearing on the father's motion for temporary relief and the Honorable Jamie F. Lee issued a temporary order on September 27, 1998 addressing the placement of the child at HLA, finding the father should have equal access to information from the school regarding the child and appointing a guardian ad litem for the child. On September 22, 1998, Judge Lee held a hearing on the mother's motion for temporary relief. Thereafter, by temporary order dated November 16, 1998, Judge Lee increased the father's child support obligation from $220.00 biweekly to $571.00 per month. The judge also found the mother made a prima facie showing that the child was in need of treatment and that Hidden Lake Academy was a proper place for such treatment, and required the father to pay an additional $380.00 per month in excess of the amount of child support calculated under the Child Support Guidelines, for a total of $951.00 per month.

On November 20, 1999, the father filed two motions for temporary relief, seeking Christmas visitation with the child and requesting an order requiring the mother to participate in psychological evaluations with a clinical psychologist the father retained. The mother opposed the psychological evaluations and further opposed any overnight visitations with the father. The motions were heard by the Honorable Lisa A. Kinon, who granted the motions by order dated December 22, 1998.

The case came to trial on April 7 and 8, 1999 before Judge Kinon. Following a pretrial conference, the parties announced to the court they had reached an agreement resolving the issues of custody and visitation, leaving the issue of HLA fees, contempt, attorney fees, suit money, and costs before the court. The parties stipulated to expert evidence consisting of reports and testimony regarding Gabrielle's emotional condition, psychological and psycho-educational evaluations, diagnosis, and placement at Hidden Lake Academy.

At trial, the father argued, in essence, that while Gabrielle was experiencing emotional and behavioral difficulties, the mother made a premature, unilateral decision to enroll her at HLA. Although he admitted Gabrielle was "doing better" as a

result of being involved in the programs at the school, he disagreed with her being in a boarding school atmosphere. Dr. C. Barton Saylor, the father's expert witness, testified a "less intrusive intervention," such as a temporary change of custody or residential care, would have been advisable at the time the mother enrolled Gabrielle at HLA. He stated that such action "might have been enough for [Gabrielle] to respond in a positive manner." However, he further opined the mother "made a genuine effort to get the best available recommendations" before deciding to enroll the child in HLA, that the decision to place Gabrielle in long term care was not "recklessly or casually" made, and it was reasonable for the mother to rely on the experts' recommendations in deciding to place Gabrielle at the school. Dr. Saylor acknowledged the father indicated that if the court were to award him custody of Gabrielle, he intended to pull her from the program. He agreed that Gabrielle benefitted from the program and recommended that the child remain at HLA through the completion of the program through December of 1999. He believed Gabrielle's best interest would be served by remaining in the custody of the mother.

Both parties filed financial declarations. According to the father's financial declaration, he earns a gross monthly income of $4,281.33 from Santee Cooper, and $351.67 from the National Guard. He also owns a retirement account valued at $94,558.38 and real estate he valued at $58,145.00.[2] The mother earns $1,026.04 from her employment, with additional income in the form of child support from the father. She owns real estate valued at $279,000.00. The mother also has access to a family trust, with an approximate value of $275,000.00, of which the mother is one of four beneficiaries. The mother testified the beneficiaries were not supposed to have access to the trust until the death of her parents, but that her mother made arrangements to access the trust for Gabrielle's school, and she was obligated by written agreement to reimburse the trust.[3] She further stated the trust

---

2. A post-trial appraisal of the father's residence established his residence was worth $77,000.00 rather than $58,145.00.

3. It is unclear whether the mother is required to reimburse the trust in full, or only the amounts paid to her by the father.

had already been liquidated greatly because of her father's poor health. The mother has no retirement funds.

By order dated May 25, 1999, Judge Kinon found, regarding the mother's decision to enroll the child at HLA:

11. Throughout this action, the Father has vigorously contested the minor child's placement at HLA. He stated his intention at the outset to remove the minor child from HLA if he was awarded custody....

....

13. The evidence overwhelmingly demonstrates that the Mother's decision to place the child at Hidden Lake Academy was reasonable under the circumstances which existed at the date of admission to the program. All of the experts who treated and/or evaluated the minor child agreed that she needed out of home treatment, and there is no evidence of any expert dissenting with placement at a therapeutic boarding school.

14. The decision to place Gabrielle at Hidden Lake Academy was also not made hastily. Over the course of six and a half (6½) to seven (7) weeks, the Mother made eighteen (18) inquiries about placement for the minor child, at least twelve (12) while the Father was in the same room. The Father actually accompanied the Mother and minor child to the various treatment facilities, to the evaluation with Grant Price and Dr. Chesno, and to the two (2) schools personally visited. I find and conclude the Father was involved in the search process for a placement for Gabrielle with the Mother.

15. Dr. C. Barton Saylor, the Father's expert witness, confirmed that the Mother's decision to enroll the minor child in HLA was not a rash decision and that the minor child had benefitted from the program. This psychologist also could not refute the placement decision in hindsight.

16. Dr. Saylor further testified that it is in the best interests of the child to complete the program at HLA. All information indicates that the minor child has made progress in the HLA program but continues to need treatment.

The court determined the child's treatment at HLA was an extraordinary medical expense, such that payment of the expense was not controlled by the provision in the parties'

divorce decree requiring the father to pay two-thirds of the child's ordinary medical expenses. Nonetheless, Judge Kinon determined the husband should be responsible for two-thirds of the HLA expenses, both prospectively and retroactively. In reaching this determination, the court specifically considered that a proportionate division of the HLA expenses based on gross income alone would require the father to pay 80% of the expenses and the mother to pay 20%. The judge rejected this formula in favor of requiring the father to be responsible for only two-thirds of the cost, finding, although the mother's income was substantially less than that of the father, the mother had "significant assets which she could mortgage and/or sell in order to cover the costs" of the HLA program. She also noted the mother could petition the "Elizabeth H. Freeman Trust" for a payout to apply to the school costs.

Because the mother had paid all HLA expenses from the child's enrollment in May, 1998 through April, 1999, the father was ordered to reimburse her for his portion of the expenses within 60 days of the order, in addition to making prospective payments directly to Hidden Lake Academy. The court noted the parties had agreed the father would be credited with the additional $380.00 monthly payments he made over the Guideline figure against his liability for the HLA fees and he would be relieved of paying the additional $380.00 monthly stipend once he began paying his portion of the HLA expenses. The increase in child support made pursuant to the Guidelines remained undisturbed. The court also ordered the father to contribute $20,000.00 toward the mother's $36,000.00 attorney fees bill within 90 days of the order.

On June 22, 1999, the father moved to alter or amend Judge Kinon's order pursuant to Rules 52(b), 59(e) and 60(b), SCRCP. Prior to the hearing on the father's motion to alter or amend, the mother petitioned the family court for a rule to show cause why the father should not be held in contempt for failure to comply with the final order. On July 29, 1999, the Honorable H.T. Abbott, III, issued the rule to show cause.

In his motion to alter or amend, the father moved for, among other things, the court to change his two-thirds allocation of HLA expenses to one-half. He also moved to have the order state he was to receive credit for all child support paid

by him to the mother during the child's enrollment in HLA, and that future child support payments to the wife be suspended during this time. He further sought a reduction in the award of attorney fees and a credit for fees of $1,500.00 paid by him pursuant to the temporary order.

Judge Kinon heard the father's post-trial motion on September 3, 1999. By order dated October 11, 1999, she denied the father's motions, with the exception of an agreed upon stipulation not pertinent to this appeal. Specifically, she found she had fully considered both parties' economic circumstances in determining the split of two-thirds for the father and one-third for the mother, and denied the father's motion to change it to one-half for both parties. As to credit for past child support and suspension of future child support while Gabrielle was enrolled at HLA, Judge Kinon denied this request noting that, following the trial, the parties agreed the father would receive credit for the additional $380.00 stipend required by the temporary order to be used toward HLA expenses. They further agreed the father would be relieved of paying that amount once he began paying his portion of the HLA expenses. However, she found she never specifically ordered child support payments and that, other than the HLA expenses, child support was not an issue she had been asked to rule upon. Finally, Judge Kinon denied the father's request for a reduction in attorney fees finding the award appropriate based on the wife's success on the merits, the difficulty of the case, and the *Glasscock* factors. She further noted the court had considered that the $1,500.00 fee had been awarded on a temporary basis in setting the amount awarded at trial.

Judge Lee held the hearing on the mother's rule to show cause on October 29, 1999. By order dated December 10, 1999, Judge Lee found the father in willful contempt for failure to comply with the final order, and sentenced him to a 90 day suspended sentence, provided he could avoid the sentence by making an immediate payment of $4,416.00, paying $24,000.00 within fifteen days of the date of the order, and beginning monthly payments of $750.00 until the mother was paid in full.[4]

---

4. It should be noted the order was dated the same month Gabrielle was scheduled to finish the HLA program and, thus, no further monthly

The father appealed, seeking review of both the final order and the order of contempt. On November 18, 1999, the husband sought a stay of both orders, which request was denied. Thereafter, the father petitioned this court for a writ of supersedeas regarding the contempt charges. On December 21, 1999, this court issued an order granting a partial stay of Judge Lee's order requiring the father to pay $24,000.00 within fifteen days.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Owens v. Owens*, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct.App.1996). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Hooper v. Rockwell*, 334 S.C. 281, 297, 513 S.E.2d 358, 367 (1999).

## LAW/ANALYSIS

### I.

The father asserts the mother should bear the full expense of Gabrielle's treatment at HLA because she unilaterally decided to place the child in the treatment facility. We disagree.

South Carolina Code Ann. § 20–7–420 (1985 & Supp.2000) grants the family court exclusive jurisdiction

> (15) To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, both before and after the birth, the expense of educating his or her child and other proper and reasonable expenses.

---

tuition would be incurred at the school. Further, Judge Lee restructured the payments in an attempt to ease the burden on the father of such a large payment up front.

We note the father does not directly challenge the family court's finding that Gabrielle's placement at HLA was proper or that the child benefitted from the treatment. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997); *Resolution Trust Corp. v. Eagle Lake & Golf Condos.,* 310 S.C. 473, 475, 427 S.E.2d 646, 648 (1993) (holding an unappealed ruling is the law of the case).

We are compelled to agree with the family court that the father was involved in the search for treatment for Gabrielle. The record supports the family court's finding that the mother made extensive inquiries, approximately fifteen to eighteen, about placement for the child before admitting her to HLA. The father was present during approximately twelve of these inquiries. The father testified he accompanied the mother and Gabrielle to various treatment facilities, the psycho-educational evaluation, and two prospective schools. He acknowledged that therapeutic boarding school was recommended for Gabrielle by a clinical psychologist. He testified he accompanied the mother and Gabrielle to boarding schools because he "wanted to know exactly what was going on with my daughter." Thus, the record shows the father participated in, or at the very least was not excluded from the search for Gabrielle's treatment.[5]

The father testified that during these trips to look at programs, he expressed concern to the mother regarding the cost of boarding facilities, and opined that Gabrielle could have benefitted from local treatment with both parents involved. Although the father ultimately objected to placing Gabrielle in a boarding facility, there is no suggestion he exerted independent efforts prior to the commencement of this action to find a suitable local treatment facility for Gabrielle. In fact, at the time the mother enrolled Gabrielle at HLA, the child had already undergone treatment through a local counselor as well as other intervention programs, and had received a number of professional recommendations that the child be placed in a therapeutic setting. Inasmuch as the evidence presented at

---

5. It is undisputed the parties toured a school in Alabama with a nine-month program costing $3,000.00 per month. However, the father objected to the "rustic" school, was adamant their daughter not be enrolled there, and threatened to physically remove the child.

trial fully bears out the family court's conclusion that Gabrielle's placement at HLA was proper, and in the absence of evidence the father presented the mother with any specific, appropriate local alternatives for treatment from which Gabrielle would have benefitted, we cannot conclude the father was simply excluded from the process of finding care for the child. Rather, the mother was compelled to choose one of the only existing alternatives for proper treatment for the child.

## II.

We also disagree with the father's contention the family court erred in requiring him to be responsible for two-thirds of the cost of treatment.

The family court considered, and rejected, an income proportionate method of allocating the cost of Gabrielle's treatment at HLA which would have subjected the father to an even greater burden. The family court expressly considered the parties' respective incomes and assets in reaching its determination as to allocation of the debt. The court's reasoning in this regard resulted in the father being assigned a less than income-proportionate share. As noted by the guardian ad litem, the parties are in diametric financial conditions, with the father's income being almost three time that of the mother's, but the mother having substantially larger assets. However, the father enjoys some financial stability in his future based on his retirement, while the mother has no retirement accounts or plans. Clearly the mother will have to rely on the equity in her real estate and her one-fourth interest in any remaining trust funds to secure her financial condition upon retirement. It would be inequitable for the court to require the mother to substantially reduce or possibly deplete her current assets when she has no other future source of support and earns very little income. Moreover, it is notable the father refused to cooperate in completing a form necessary to determine Gabrielle's eligibility to receive financial assistance for the school costs.

While we recognize the financial strain the expense of Gabrielle's treatment at HLA puts on the parties, we are nonetheless convinced the family court properly considered

their financial circumstances and the equities of the case in apportioning the cost of the treatment.[6]

## III.

The father next asserts the family court erred in requiring him to pay $20,000.00 of the mother's attorney fees. We disagree.

The decision whether to award attorney fees is a matter within the sound discretion of the family court and will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In determining whether to award attorney fees, the court should consider the parties' ability to pay their own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining the amount of attorney fees to award, the court should consider the nature, extent, and difficulty of the case, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

The father summarily argues he does not have the ability to pay the award of attorney fees. He does not challenge the sufficiency of the order in addressing the factors or of the evidence in support of the other factors to be considered in an attorney fee award. The father was ordered to pay $20,000.00 of the mother's $36,000.00 in attorney fees. This amounts to a little over half of her bill. Under the facts and circumstances of this case, particularly the father's superi-

---

**6.** The father summarily asserts it is inequitable to require him to continue paying child support to the mother while he is responsible for two-thirds of the child's expenses at HLA. Although we are not unsympathetic to this argument, Judge Kinon denied the father's motion for reconsideration on this ground ruling that the issue of child support payments to the mother, other than the HLA expenses, was not properly before her. The father has not challenged that ruling on appeal, and it is thus the law of the case. *ML–Lee Acquisition Fund, L.P.*, 327 S.C. at 241, 489 S.E.2d at 472 (1997); *Resolution Trust Corp.*, 310 S.C. at 475, 427 S.E.2d at 648 (1993) (an unappealed ruling is the law of the case).

or income, the fact the father initiated this action seeking custody and did not drop the issue until trial, the mother's successful defense against the father's attempt to avoid the child's continued placement at HLA, as well as the mother's success in her plea for a substantial contribution from the father toward the HLA fees, we find no abuse of discretion in the award.

## IV.

Next, the father takes issue with the family court's denial of his request the mother contribute to the fees for his expert witness, Dr. C. Barton Saylor, requiring him to pay all the fees. We find no error.

"The decision of whether to award expert witness fees, like the decision to award attorney fees, rests within the sound discretion of the family court." *Brunner v. Brunner*, 296 S.C. 60, 62, 370 S.E.2d 614, 616 (Ct.App.1988). We find no abuse of discretion occurred here. In support of its decision to assign Dr. Saylor's fees to the husband, the family court found the father had the opportunity to have the child evaluated prior to her placement at HLA, but failed to do so. The father asserts the mother blocked his attempt to have the child evaluated. He presented no evidence, however, that he made any attempt, prior to retaining Dr. Saylor for purposes of this litigation, to have the child independently evaluated. In particular, we note the father made no such attempt during the 6 to 7 week period prior to the commencement of this litigation, when placement alternatives were being explored. We further note, although Dr. Saylor testified less intrusive intervention **might** have been enough for Gabrielle to have responded in a positive manner, he ultimately agreed the decision to place Gabrielle in long term care was not recklessly or casually made and it was reasonable for the mother to rely on the experts' recommendations in deciding to place Gabrielle at the school. He further agreed that Gabrielle benefitted from the program, recommending she remain at the school, and believed Gabrielle's best interest would be served by maintaining custody with the mother.

## V.

Next, the father contends Judge Lee erred in finding him in contempt based upon a rule to show cause which was improperly issued prior to the issuance of an order on his motion for reconsideration. We find no error.

In support of his argument that the rule to show cause was improperly issued, the husband contends a motion made pursuant to Rule 59(e), SCRCP stays the time for appeal by delaying entry of a final judgment, thus depriving the court of a final order from which a rule could be issued. We disagree. While a timely motion made under Rules 52(b) and 59(e) does stay the time to appeal a judgment, the rules do not provide such motions stay proceedings to enforce a judgment. Rule 60(b) specifically states such a motion does not affect the finality of a judgment or suspend its operation. Moreover, while Rule 62(a), SCRCP automatically stays enforcement of a judgment, the automatic stay expires 10 days after the judgment is entered. Although further stays are available under the subdivisions of Rule 62, they are not automatic and must be ordered by the court. *See, e.g.,* Rule 62(b), SCRCP (providing court may, in its discretion, stay the execution of proceedings to enforce a judgment, pending disposition of a motion for a new trial or to alter or amend made pursuant to Rules 59, 60, 50 or 52(b)). There is no evidence the father sought to have the contempt matter held in abeyance pending the court's ruling on his motion to alter or amend.

## VI.

The father next asserts the family court erred in finding him in willful contempt of the May 25, 1999 order. We find no reversible error.

"Contempt results from the willful disobedience of a court order." *Henderson v. Henderson,* 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989). The record before the court must "clearly and specifically" exhibit the contemptuous conduct to sustain a finding of contempt. *Id.* A finding of contempt rests within the trial judge's sound discretion. *Id.* This court will reverse a trial judge's determination regarding contempt only if it is without evidentiary support or is an abuse of discretion.

*Dale v. Dale*, 341 S.C. 516, 520, 534 S.E.2d 705, 707 (Ct.App. 2000).

The May 25, 1999 order clearly directed the husband to pay two-thirds of Gabrielle's expenses at HLA prospectively as well as retroactively, in order to reimburse the mother for the father's share of payments made by her in the past. The father does not challenge the clarity of the order and admits he failed to comply with its terms. He asserts, however, that his failure to comply with the order was a result of his financial inability to do so, rather than any willfulness on his part.

In finding the father in contempt, the family court noted that from April 30, 1998 until July of 1999, the father obtained and spent $37,311.90. The sources of these funds were (1) a $14,420.82 inheritance; (2) a $10,000.00 loan from the father's 401(k) plan; (3) a $5,891.08 loan from the father's mother; and (4) a $5,000 loan from the father's sisters; and (5) Gabrielle's $2,000.00 inheritance from the father's relative, which the father obtained by signing as Gabrielle's legal guardian.

The father received his $14,420.82 inheritance on April 29,1998, one day before he wrote a letter to the mother stating he would not be able to contribute to Gabrielle's treatment. In spite of his knowledge of his daughter's need of treatment and her enrollment at HLA, he gave $7,500.00 of his inheritance to his mother, allegedly in satisfaction of a debt he created in 1994. He also used some of the funds from his inheritance to pay for home improvements. He spent Gabrielle's $2,000.00 inheritance to pay for his travel, hotel, and food expenses while Gabrielle was hospitalized in Charter of Charleston and Charter of Memphis. In September of 1998, with full knowledge that Gabrielle was enrolled in HLA and that the mother was bearing the full cost of her treatment, the father borrowed $8,891.08 from his mother, $5,000.00 of which he used to pay his attorney. The father admitted that $3,000.00 of the $8,891.08 promissory note represented the balance he owed his mother from the 1994 loan. Moreover, the husband did not use the proceeds of either the $10,000.00 loan from his 401(k), which he received in January of 1999, or the $5,000.00 loan from his sisters to help satisfy his support obligation. As well, the father executed liens against his

property in favor of his mother and sisters, refinanced his home and real estate, and satisfied the mortgages held by his family members.[7] Due to the mortgages filed in July 1999, the father received only $7,981.57 from the refinancing, an amount substantially less than the amount he could have obtained had he not executed the mortgages. The father acknowledged he would have had over $20,000.00 to pay on his HLA obligations had he not executed the mortgages and paid his family members, but reasoned such a contribution would have made little difference in his total obligation. In spite of the court order, the husband did not make any payments to the school.

In addition to failing to reimburse the mother for his share of the HLA expenses or make payments directly to HLA, it is undisputed the father failed to make child support payments in the amounts specified in the May 25, 1999 order. The father was required to make payments of $951.00 per month until he began making his HLA payments, at which point he was allowed to reduce the child support payments to $571.00 per month. The father did not begin making his portion of the HLA payments, yet he reduced his child support payments to the wife. Further, not only did he reduce the child support, he did not even pay the $571.00, but cut the amount back to $476.00 per month, the amount due under the 1993 order.

Under these facts and circumstances, and giving due deference to the family court's consideration of matters of credibility, we find no error in the court's determination the father's failure to comply with the mandates of the final order was willful in nature.

## VII.

The father also contends the family court erred in awarding the mother $1,000.00 in attorney fees in connection with bringing the contempt action. He asserts the award of these fees should be reversed if the finding of contempt is reversed. Given our affirmation of the family court's finding of contempt, this argument has no merit.

---

7. The proceeds from this refinancing, approximately $8,000.00, are being held in escrow by the father's attorney.

The father further argues, however, the award should be reversed based on the court's failure "to make findings of salient facts and conclusions of law" supporting the award in its order. We agree.

Rule 26(a), SCRFC provides:

An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision.

When an order from the family court is issued in violation of Rule 26(a), the appellate court may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence. *Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 535 (Ct.App.1998). However, if there is inadequate evidentiary support for the factors to be considered in making such an award, the appellate court should reverse and remand for the trial court to make specific findings. *Id.* at 646, 506 S.E.2d at 535.

In this case, the family court merely stated the mother "introduced a detailed Affidavit from her attorney" in support of her request for fees, that the hourly rate of $150.00 was reasonable, and "based on the factors relevant to setting an award of fees" the father should contribute $1,000.00 toward the mother's attorney fees. Clearly, this does not comply with the mandate of Rule 26(a). Further, there is simply no evidentiary support in the record whatsoever from which this court can make its own findings.[8] Accordingly, we reverse and remand this issue for the family court to make specific findings of fact.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

ANDERSON and SHULER, JJ., concur.

---

8. There is no indication of the hours spent on the case or even the total amount of the attorney fees incurred by the mother in the contempt action.