THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Terri Lynn Porter,       
Appellant,
 
 
 

v.

 
 
 
Robert Scott Porter,       
Respondent.
 
 
 

Appeal From Oconee County
Rolly W. Jacobs, Family Court Judge

Unpublished Opinion No. 2003-UP-030
Submitted December 10, 2002  Filed 
 January 8, 2003   

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
Cheree  Gillespie, of Clemson; for Appellant
Julian L. Stoudemire, of Seneca; for Respondent.
 
 
 

 
PER CURIAM:  In this domestic case, Terri 
 Lynn Porter (the mother) appeals several aspects of the family courts order.  
 The issues on appeal include numerous findings of fact by the family court, 
 the award of divorce to both the mother and Robert Scott Porter (the father) 
 on the ground of one years continuous separation, the award of joint custody 
 of the parties minor child with primary placement awarded to the father, the 
 family courts failure to order the father to pay retroactive child support 
 to the mother, and the family courts failure to order that the fathers name 
 be removed from the birth certificate of another child of the mother.  We affirm 
 in part, reverse in part, and remand. [1] 
FACTS
The parties married in August 1997, but lived together 
 for approximately four years prior to the marriage.  The mother has three 
 minor daughters, Sara, born in 1991, Haley, born in August 1994, and Faith, 
 born in January 1997.  Of the three minor children, only Faith is the 
 fathers biological child.  Haley is not the fathers biological child; 
 however, she was born during the time the mother and father were cohabitating 
 before they married, and the father is designated as her father on her birth 
 certificate.  
The parties separated in July 1998, and the mother 
 commenced this action against the father in September 1998.  After the mother 
 filed suit, the parties reconciled briefly and separated for the final time 
 in November 1998.  In her complaint, the mother sought a divorce on the 
 statutory grounds of physical cruelty or, in the alternative, habitual drunkenness 
 or drug abuse.  The mother also sought child custody and support for 
 Haley and Faith, alleging the father has acknowledged two children have been 
 born of their union. 
The father answered, admitting to so much of the 
 mothers complaint as alleged two children were born to the parties union.  
 He otherwise denied the mother was entitled to the relief sought in her 
 complaint.  The father also counterclaimed against the mother, seeking 
 a divorce on the ground of adultery and an order awarding him joint custody 
 of the two children.
In a pretrial order dated August 2, 1999, the family 
 court required the father to inform the mothers attorney in writing by August 
 16, 1999, if he desired a paternity test for Haley.  There is no indication 
 in the record that the father ever sought such testing.  Thereafter, by temporary 
 order dated February 24, 2000, the family court awarded the mother continued 
 custody of Faith and ordered the father to pay her child support in the amount 
 of $108.00 per week commencing on January 1, 2000.  The family court 
 also restrained the father from harassing the mother, appointed a guardian ad 
 litem to represent Faith, and declined to order visitation for the father pending 
 the outcome of an investigation by the Department of Social Services of allegations 
 of child abuse.
In April 2000, the mother petitioned the family 
 court for a rule to show cause why the father should not be held in contempt 
 for failure to remit court-ordered child support payments.  The family 
 court issued the rule to show cause and scheduled a hearing on the matter for 
 July 12, 2000.  The hearing was thereafter rescheduled and subsumed into 
 the final hearing on the merits of the underlying divorce action.
The family court held the final hearing on July 
 20, 2000.  At the onset of the hearing, the mother sought and received 
 leave to amend her complaint to request a divorce on the ground of one years 
 continuous separation.  The mother also unsuccessfully sought to amend 
 her pleadings to include a request for divorce on the ground of adultery.  
 The family court found, however, that the mother could present evidence 
 of the fathers post-separation adultery to establish any effect it might have 
 had on the break-up of the marriage. 
By order dated September 29, 2000, the family court 
 did the following: awarded both parties a divorce on the ground of one years 
 continuous separation, awarded the parties joint custody of Faith with primary 
 placement with the father and visitation for the mother, ordered the mother 
 to pay child support to the father in the amount of $437.00 per month, declined 
 to award either party attorney fees, declined to hold the father in contempt 
 for failing to make child support payments as mandated in the prior order, and 
 ordered that the amount of any arrearage the father had accumulated would be 
 applied as a credit to the mother against her child support obligation until 
 such arrearage was exhausted.
LAW/ANALYSIS
1.  On appeal, the mother asserts error in nineteen 
 separate findings of fact by the family court.  We decline to address separately 
 the propriety of each of the contested findings; nevertheless, we note virtually 
 all the mothers challenges involve findings of credibility, veracity, and character 
 of witnesses at trial, most particularly the mother herself.  The family court 
 found the mother was less than forthcoming in a number of ways, including her 
 use of illicit drugs, her misleading statements to the guardian ad litem regarding 
 her cohabitation with a paramour during the pendency of the litigation, and 
 her role in encouraging or remaining silent as to her two older daughters unfounded 
 allegations of sexual abuse against the father and other adult males.  In addition, 
 the family court found the mother denied the father visitation with Haley in 
 an effort to punish him and made exaggerated claims of domestic violence against 
 him in order to gain advantage over him for purposes of these proceedings.  

The appellate courts of this State recognize the 
 superior position family court judges possess to gauge the credibility of the 
 witnesses and assign weight to their testimony. 
 [2]   We discern no sound reason to depart from this standard in the present 
 case.  Accordingly, giving due deference to the family court, we decline to 
 disturb the portion of the order containing factual findings relating to witness 
 credibility.
We agree with the mother, however, that the family 
 court erred in determining the fathers income for purposes of calculating the 
 parties respective child support obligations.  The family court found the father 
 is employed at the same place that he had been for some time and now earns 
 approximately $1,280 per month gross as an electrician.  The father, 
 however, testified he had been working at a new job for less than two weeks 
 at the time of trial.  According to his own testimony, the father earns 
 $11 per hour and is guaranteed at least 40 hours pay per week.  This 
 yields a monthly salary of $1,906.  We therefore reverse the award of child 
 support and remand the issue to the family court.  On remand, the family court 
 is directed to recalculate the parties child support obligations using figures 
 reflective of their current incomes.    
The mother also correctly notes the family court 
 erroneously found the parties separated in July 1998, rather than November 1998.  
 The family court also erroneously stated the father, rather than the mother, 
 sought leave at trial to go forward with the divorce on the ground of adultery.  
 Although erroneous, neither of these findings is of any real consequence here.  
 The parties had been separated for more than one year at the time of the July 
 2000 final hearing, and neither party suffered any prejudice because of the 
 finding.  Accordingly, we decline to disturb the order in this regard. [3] 
The remaining factual findings are either supported 
 by the record or so inconsequentially imprecise as to have no effect whatever 
 on this courts disposition of the issues raised on appeal.  By way of example, 
 the mother asserts the family court erred in finding that her pleadings initially 
 alleged the children were the product of the union of Plaintiff and Defendant, 
 and the answer admitted the same.  The mother would have this court 
 hold this finding was erroneous despite the fact she expressly alleged in her 
 complaint that the Defendant has acknowledged two children have been born of 
 the union.  Neither the family courts failure to repeat her allegation 
 verbatim nor the negative inference drawn by the family court regarding the 
 mothers reasons for making the allegation renders the finding erroneous.  
2.  The mother next argues the family court erred 
 in awarding both parties a divorce on the ground of one years continuous separation.  
 Specifically, she contends that only she, and not the father, moved to amend 
 her pleadings to include a request for divorce on this ground.  Even assuming 
 error as to the family courts finding in this regard, the mother suffered no 
 prejudice at all.  The marriage is no less dissolved than it would have been 
 had the family court granted a divorce to her alone on the same ground. 
 [4] 
3.  The mother further asserts the family court 
 erred in failing to order the father to pay child support retroactive to the 
 date of her complaint and in failing to issue an order allowing for the removal 
 of his name from Haleys birth certificate.  These issues are not preserved 
 for our review.   The family court did not rule on either of these issues in 
 its final order, and the record does not show any post-trial motion by the mother 
 for a ruling on either issue after the order. 
 [5] 
4.  The mother asserts the family court erred in 
 failing to hold the father in contempt of court for failure to pay child support 
 as required by the temporary order.  We find no reversible error.
Contempt results from the willful disobedience 
 of a court order. [6]   The record before the court 
 must clearly and specifically exhibit the contemptuous conduct to sustain 
 a finding of contempt. [7]   A 
 finding of contempt rests within the trial courts sound discretion and will 
 be disturbed on appeal only if it is without evidentiary support or is an abuse 
 of discretion. [8] 
The father admitted he failed to make timely child 
 support payments and accumulated an arrearage.  It is undisputed, however, 
 that the order requiring the father to make child support payments beginning 
 on January 21, 2000, was not filed until February 25, 2000.  Furthermore, 
 the father explained that his efforts to satisfy the arrearage and simultaneously 
 keep up with his ongoing obligation were frustrated by a failed construction 
 contract.    
Under these facts and circumstances, we discern 
 no abuse of discretion in the family courts determination the fathers failure 
 to make timely support payments was not willful in nature and, therefore, did 
 not warrant a finding of contempt.  
4.  Finally, the mother asserts the family court 
 erred in failing to award her sole custody of Faith.  We disagree.
Custody is based on a determination of the character, 
 fitness, attitude, and inclinations on the part of each parent. [9]   Moreover, the totality of the circumstances peculiar to each 
 case constitutes the only scale upon which the ultimate decision can be weighed. [10] 
Notwithstanding the guardian ad litems 
 statement that both the parties were loving parents, we agree with the 
 family court that neither party in this case is a paragon of moral virtue. 

Initially, both parties denied using any illicit 
 drugs during the pendency of this litigation.  The father, however, eventually 
 admitted to using marijuana.  The mother, on the other hand, continued to deny 
 any drug use, even after she tested positive for use of amphetamines.  In 
 addition, despite having leveled numerous accusations of physical abuse against 
 the father, including four separate incidents wherein she caused the father 
 to be criminally charged with domestic violence, the mother later admitted that 
 the father struck her on only one occasion.
Moreover, at the time of the final hearing, both 
 parents were involved in what the guardian termed nonconventional relationships.  
 Specifically, both the mother and father were living with paramours, and 
 both stated their intent to continue their respective living arrangements. 
Despite their shortcomings, both parties 
 were found to have good parental qualities.  According to the guardian ad litem, 
 the parents  are some of the most tuned-in to these children and their likes 
 and dislikes of any Ive ever seen.  Both parties also maintain steady 
 employment and, despite the live-in status of their respective paramours, enjoy 
 apparently stable and suitable households.  
In our view, the propriety of the family 
 courts ultimate determination of the most suitable custody arrangement for 
 Faith turned on the mothers attitude towards the father and the unlikelihood 
 that she would foster a healthy relationship between the father and Faith if 
 she were granted sole or primary custody of the child.  Throughout the course 
 of this litigation and even on appeal, the mother continued to adamantly express 
 her concerns that the father had in the past or will in the future sexually 
 abuse Faith or one of her other daughters.  Although Haley accused the father 
 of inappropriate touching, the allegations were deemed unfounded after an investigation 
 by the Department of Social Services.  Moreover, the guardian ad litem noted 
 in her report that Haley attached no particular meaning to the incident and 
 was not afraid of her father.   
Inasmuch as the mother is apparently unwilling 
 or unable foster a loving, healthy relationship between Faith and the father, 
 we hold the family court correctly determined that Faiths best interests presently 
 dictate a joint custodial arrangement with primary placement vested in the father.  
   
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GOOLSBY, HUFF, and SHULER, JJ., concur.

 
 
 [1]    Because oral argument would not aid the court in resolving the 
 issues on appeal, we decide this case without oral argument pursuant to Rule 
 215, SCACR.

 
 
 [2]   See Hooper v. Rockwell, 334 S.C. 281, 297, 513 S.E.2d 
 358, 367 (1999) (stating that, notwithstanding the standard of review in equity 
 cases, [t]he appellate court is not . . . required to ignore the fact that 
 the family court, who saw and heard the witnesses, was in a better position 
 to evaluate their credibility and assign comparative weight to their testimony).

 
 [3]   See Recco Tape & 
 Label Co. v. Barfield, 312 S.C. 214, 216, 439 S.E.2d 838, 840 (1994) (stating 
 the appellant must show both the error of the ruling and resulting prejudice 
 in order for a decision to be reversed).

 
 
 [4]    Cf. Tinsley v. Tinsley, 326 S.C. 374, 380, 483 S.E.2d 
 198, 202 (Ct. App. 1997) (Additionally, because the parties received a divorce 
 on another ground, Wife was not prejudiced by the family courts decision 
 not to grant her a divorce on the ground of physical cruelty.).

 
 
 [5]   See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 
 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first 
 time on appeal, but must have been raised to and ruled upon by the trial judge 
 to be preserved for appellate review.).

 
 
 [6]    Henderson v. Henderson, 298 S.C. 190, 197, 379 S.E.2d 125, 
 129 (1989).  

 
 [7]    Id.

 
 [8]    Dale v. Dale, 341 S.C. 516, 534 S.E.2d 705 (Ct. App. 
 2000).

 
 [9]    Gandy v. Gandy, 297 S.C. 411, 377 S.E.2d 
 312 (1989).    

 
 
 [10]   Davenport v. Davenport, 265 S.C. 524, 527, 220 S.E.2d 228, 
 230 (1975).