THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Toni E. Cooke, Appellant,
 
 
 

v.

 
 
 
 Richard C. Cooke, Respondent.
 
 
 

Appeal From Dillon County
Jamie Lee Murdock, Jr., Family Court Judge

Unpublished Opinion No. 2006-UP-068    
Heard November 16, 2005  Filed February 1, 2006

AFFIRMED

 
 
 
 Evander G. Jeffords, of Florence; John S. Nichols, of Columbia, for Appellant.
 George M. Hearn, Jr., of Conway, for Respondent.
 
 
 

PER CURIAM:  Toni Cooke (Wife) appeals from the order of the family court identifying, valuing, and apportioning the marital property and awarding Wife $15,000 in attorneys fees and $15,000 in expert fees.  We affirm. 
FACTS
Richard C. Cooke (Husband) and Wife married in August of 1984.  At the time of their marriage Husband was a twenty-four year old farmer and Wife was an eighteen year old high school senior.  Husbands father was in the nursing home business.  Shortly after the couple married, Husband took and passed the test to become a nursing home administrator.  Wife graduated from high school and worked part-time at a drug store and went to college, until she gave birth to the couples son, Richard, in 1986.  In 1989, the couple entered into an agreement to operate McCoy Memorial Nursing Center (McCoy).  Wife returned to college and graduated in 1991.  She began taking the test to become a nursing home administrator, which she ultimately passed in 2002.  
In 1992, the couple formed Cooke Management Company, which they used to manage McCoy and one of Husbands fathers facilities.  In 1994, the couples daughter, Avonlea, was born.  That same year the couple formed A&R Enterprises to manage and lease McCormick Health Care and Fountain Inn Nursing Home.  The couple continued to manage those nursing homes in addition to several others until their separation in November of 2000.  
In February 2001, Wife commenced an action seeking separate maintenance and support, joint custody, determination of child support, alimony, equitable apportionment of the marital property, and an award of attorneys fees and costs.  The family court issued a temporary injunction and restraining order prohibiting the parties from disposing of or encumbering marital property.  In May 2002, the family court granted the couple a divorce based on one years continuous separation and approved a joint custody agreement awarding custody of their son to Husband and custody of their daughter to Wife.  In its order, the family court also retained jurisdiction over all other issues raise by the parties in their pleadings awaiting completion of discovery.  
The family court held a hearing on the remaining issues in July of 2003 and issued a final order in September 2003.  In its order, the family court: (1) approved a settlement agreement between the parties regarding alimony and division of the business property; (2) identified, valued and apportioned the remaining marital property; (3) determined the child support obligations of both parties; and (4) ordered Husband to pay $15,000 toward Wifes attorneys fees and $15,000 toward Wifes expert fees.  Both parties filed motions pursuant to Rules 59 and 60, SCRCP, requesting the family court alter or amend its order.  The family court reduced the value of the boot Husband received as a result of a bank merger by the amount Husband used to pay taxes, changed an award of the Ford Farm to the Husband with credit to Wife, and ordered Husband pay the mortgages on two tracts of property awarded to the Wife.  It denied all of the other requests made by the parties in their motions.  Wife appealed.
STANDARD OF REVIEW
On appeal from an order of the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence.  Hopkins v. Hopkins, 343 S.C. 301, 304, 540 S.E.2d 454, 456 (2000).  However, this broad scope of review does not require us to ignore the findings of the family court.  Haselden v. Haselden, 347 S.C. 48, 58, 552 S.E.2d 329, 334 (Ct. App. 2001).  Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Id.
LAW/ANALYSIS
I.  Equitable Apportionment
Wife argues the family court erred in apportioning 45% of the marital estate to her and 55% to Husband.  We disagree. 
Section 20-7-472 of the South Carolina Code (Supp. 2005) requires the family court to consider fifteen factors in apportioning marital property, but allows the court to weigh those factors as it deems appropriate.  In reviewing the family courts equitable apportionment, an appellate courts role is to examine the fairness of the apportionment as a whole.  Bragg v. Bragg, 347 S.C. 16, 24, 553 S.E.2d 251, 255 (Ct. App. 2001).  The family courts apportionment will not be disturbed on appeal absent an abuse of discretion.  Id.  at 23, 553 S.E.2d at 255.  This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20-7-472 sufficiently for us to conclude he was cognizant of the statutory factors.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001). 
The family courts order indicates it considered all of the appropriate factors, and we find the family court fairly apportioned the marital property as a whole.  At the time of the trial, Husband was 43, while Wife was 37.  Their marriage lasted for 17 years.  Both Husband and Wife have college degrees and are certified nursing home administrators.  Both have experienced health problems in the past, but as the family court found, neither have problems that affect their ability to work.  We agree with the family courts determination that Husband earns approximately $180,000 per year based on his earnings for 1999, 2000, 2001, and 2002.  As part of an agreement between the parties, Wife will discontinue her employment at Bradford Gardens, however she will receive $325,000 in lump sum alimony payable by Husband over a period of five years.  Although Husband alleged Wife committed adultery, the family court found that the marriage was broken simply because the parties grew apart.  
The parties entered into a custody agreement in which their son would live with Husband and their daughter would live with Wife.  In light of this arrangement, the family court ordered Husband to pay Wife $200 per month in child support in addition to paying for 70% of daughters private school tuition and maintaining health insurance for both children.  
The family court required the parties to be responsible for any debt associated with the property they received, other than two tracts Wife received that Husband is to pay the mortgages.  
The family court determined Husbands earnings were triple Wifes over the course of the marriage.  This determination is supported by Husbands testimony that he contributed 76% of the income during the marriage, as compared to Wifes 24% and a schedule introduced by Husband detailing the parties earnings.  Wife does not contest this fact, but simply argues she made more indirect contributions in addition to her direct financial contributions.  However, Husband contends he and Wife shared the household duties and his mother cared for their son while Wife worked.  
In Pool v. Pool, we addressed a comparable situation in which the family court awarded 60% of the marital property to the husband. 321 S.C. 84, 88, 467 S.E.2d 753, 756 (Ct. App. 1996) affd as modified by 329 S.C. 324, 494 S.E.2d 820 (1998).  Similar to this case, the husband made 71% of the direct financial contributions to the marriage and the parties offered contradictory testimony concerning their indirect contributions.  In upholding the family courts decision, we found, The court assessed the credibility of the parties in weighing their testimony concerning their indirect contributions to the marriage and concluded the parties contributed equally in terms of indirect contributions.  Id. at 87-89, 467 S.E.2d at 755-56.  Considering the contributions and the other factors, we concluded the overall apportionment was fair.  Id.  at 89, 467 S.E.2d at 756.
In the instant case, similar to Pool, we find the family court assessed the credibility of the parties concerning the contributions to the marriage.  In addition, the court thoroughly addressed the other applicable factors.  Thus, we find the family court did not abuse its discretion in apportioning 55% of the marital property to Husband and 45% to Wife.
II.  Life Insurance 
 Wife argues the family court erred in awarding her only $109,080.45 from the proceeds of the life insurance policy on Husbands father.  We disagree.  
During the marriage, Husbands father, Carlyle Cook took out several policies on his life.  One policy, which had a face value of $450,000, named Husband as the owner of the policy and primary beneficiary.  Husband testified at the final hearing that McCoy, which he and his father jointly owned, paid the premiums.  In June 2002, just after the couples divorce, but prior to the family courts identification of the marital property, Husbands father died as a result of an accident.  Husband, as primary beneficiary, received $484,802 in proceeds from the policy.  In its final order, the family court determined because McCoy paid the premiums on the policy and Husband owned a 50% interest in McCoy, only one-half of the proceeds from the policy were marital property.  The Wifes 45% share of this amount was $109,080.45.  On Wifes motion to alter or amend, the family court held that even if the entire death proceeds were included in the marital estate, based on the contributions of the parties in acquiring the funds, the award of $109,080.45 to Wife was appropriate and should not be modified.   
Section 20-7-472 vests the family court, not this court, with discretion to decide what weight to assign each factor in considering equitable apportionment of the marital estate.  When reviewing the family courts equitable apportionment, this Court looks to the fairness of the overall apportionment.  If the end result is equitable, it is irrelevant that this Court might have weighed specific factors differently than the trial judge.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988) (citation omitted).
Here, as noted above, the family court considered all of the relevant factors in making its initial apportionment of the marital estate.  In its order on the Wifes motion to alter or amend, the court focused on the contribution of the parties to the acquisition of the life insurance proceeds in apportioning the proceeds as a marital asset.  In her brief, the wife made no argument that such an apportionment was inequitable.[1]  An appellant has the burden of convincing this court that the family court committed error in its findings.  Widman v. Widman, 348 S.C. 97, 117, 557 S.E.2d 693, 703 (Ct. App. 2001).  Therefore, we hold that as the family court considered all of the relevant factors, we find no abuse of discretion in its award to Wife of $109,080.45 as her share of the life insurance proceeds. 
III. Valuation of Certificate of Deposit and Boot 
Wife argues the family court erred in valuing a certificate of deposit (CD) at Carolina Community Bank and the cash boot received by Husband after the merger of Carolina Community Bank and First Bank of North Carolina.  Wife asserts the family court erred in finding Husband used funds from these accounts to pay the couples 2000 income tax liabilities.  She contends Husband offered no evidence other than his own testimony to support his assertion, and thus, the family court erred in reducing the value of these assets to reflect the alleged tax payments.  We disagree. 
At trial, Husband and Wife both submitted financial declarations including the CD valued at $31,934 and the boot money of $90,000.  However, on Husbands declaration, he indicated he used the proceeds from the CD and $33,120 of the proceeds from the boot to pay the couples 2000 income tax liability.  In addition, Husband stated during his testimony that he used the proceeds from the CD and a portion of the boot to pay the tax liability.  
Although Husband only cites to his own assertions as evidence of payment, Wife does not offer any evidence to the contrary.  Thus, given our deference for the family court, which saw and heard the witness at trial, we find no error by the family court in choosing to believe Husbands assertions.  See Miles v. Miles, 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct. App. 2003) (stating the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony).  
IV. Attorneys Fees and Costs 
Wife argues the family court abused its discretion in only awarding her $15,000 in attorneys fees and $15,000 in expert witness fees.  She maintains because she obtained a favorable result and incurred $58,000 in attorneys fees and $61,000 in expert fees, she should have been awarded these amounts.  We disagree. 
Section 20-7-420(38) (Supp. 2005) of the South Carolina Code provides that attorneys fees may be awarded in an action brought in family court.  An award of attorneys fees rests within the sound discretion of the trial judge and should not be disturbed on appeal unless there is an abuse of discretion.  Patel v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004).  In determining what amount of attorneys fees should be awarded, the court should consider the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). 
In its order, the family court noted Wife had already been awarded $25,000 at a prior hearing.  It acknowledged Wife received a favorable result in that she received a greater portion of the marital property than originally proposed by Husband and she received a portion of the life insurance proceeds from Husbands fathers policy.  Considering each partys financial condition and ability to pay, the family court noted Husband earned on average $190,000 in the two years prior to the commencement of the marital litigation, while Wife is entitled to receive a substantial lump sum alimony award.  
In addition, the family court considered the reasonableness of the fees charged.  In its order, the family court called attention to several errors made by Wifes expert in valuing Husbands ownership interest in various nursing home businesses.  During cross-examination, Wifes expert admitted he omitted a debt owed by A & R and misvalued a mortgage owed by another entity.  In addition, Wifes expert admitted to using incorrect ownership percentages for another business.  The family court also mentioned some of the charges in the bill submitted by Wifes attorney were incurred as a result of the contempt proceeding against both Husband and Wife.  In the order finding both Husband and Wife in contempt, the family court instructed both parties to pay their own attorneys fees.  Thus, as the family court stated in its order, these fees should not be considered in the total attorneys fees award as they have been previously denied.  
Based on our review, the family court properly considered the appropriate factors in awarding Wife $15,000 in attorneys fees and $15,000 in expert fees.  Accordingly, we do not find the family court abused its discretion in making these awards, rather than awarding Wife the entire amount of fees she incurred.  
CONCLUSION
For the above reason, the order of the family court is 
AFFIRMED.
HUFF and WILLIAMS, JJ., and CURETON, A.J., concur. 

[1] At oral argument, Wife did argue for the first time that the family court should not have apportioned the proceeds separately from the remainder of the marital estate.  We find this argument was not properly presented to this court.  See South Carolina Dept of Social Servs. v. Basnight, 346 S.C. 241, 250, 551 S.E.2d 274, 278 (Ct. App. 2001) (stating an appellant may not use oral argument as a vehicle to argue issues not argued in the appellants brief.).