THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Elizabeth N. Powell, Appellant,
 
 
 

v.

 
 
 
 Jackson N. Powell, Respondent,
 and Alice Nims Powell, Edna Alice Powell Rosen, Fonda Powell Stroud, and Powells Rentals, A Family Corporation, are Stakeholders.
 
 
 
 
 

Appeal From Richland County
 A. E. Gene Morehead, III, Family Court Judge

Unpublished Opinion No.   2006-UP-050
Submitted January 1, 2006  Filed January 20, 2006 

AFFIRMED

 
 
 
 Jan L. Warner, of Columbia, for Appellant.
 Stanley G. Freeman, of Columbia, for Respondent.
 
 
 

PER CURIAM: Elizabeth Powell (Wife) appeals the family courts order granting her a divorce from Jackson Powell (Husband) and equitably dividing the marital estate.  We affirm.[1]
STANDARD OF REVIEW
On appeal from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). We are not, however, required to disregard the findings of the family court, which saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Haselden v. Haselden, 347 S.C. 48, 58, 552 S.E.2d 329, 334 (Ct. App. 2001); Wilson v. Walker, 340 S.C. 531, 537, 532 S.E.2d 19, 22 (Ct. App. 2000).  
Section 20-7-472 of the South Carolina Code Annotated (Supp. 2005) sets forth factors the family court should consider when equitably dividing a marital estate and vests the family court with discretion to decide what weight to assign each factor.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001).  This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20-7-472 sufficiently for us to conclude he was cognizant of the statutory factors. Id.  An award of alimony rests within the sound discretion of family court and will not be disturbed absent an abuse of discretion.  Dearybury v. Dearybury, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002).  An award of attorneys fees and costs is a discretionary matter not to be overturned absent abuse by the trial court.  Donahue v. Donahue, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989).
LAW/ANALYSIS
Wife argues the family court erred in (1) failing to make specific findings of fact and conclusions of law with regard to each of the equitable distribution factors set forth in section 20-7-472 of the South Carolina Code; (2) in failing to award Wife alimony secured by Husbands possible inheritance; (3) in failing to take into account Husbands dissipation of marital asset by dividing the marital estate equally; (4) in refusing to give appropriate weight to the testimony of Wifes accountant regarding Wifes foregone opportunities; (5) in finding Husbands forty percent interest in the family business was transmuted into marital property and, alternatively, in failing to award Wife a special equity interest in the business; (6) in making findings of fact not supported by the evidence and in declining to find Husband dissipated the marital estate by more then $100,000 during the marriage; (7) in failing to question Husbands credibility; (8) in failing to award Wife the full amount of her attorneys fees; (9) in failing to assign all of the marital debt to Husband; (10) in failing to adopt Wifes valuation of Husbands forty percent interest in the family business; (11) in failing to enforce a prior order awarding Wife $750 in attorneys fees; (12) in refusing to give adequate consideration to Wifes faultlessness in the break up of the marriage; (13) in not including assets dissipated by Husband in the marital estate; and (14) in determing that Wifes financial circumstances were better then Husbands.  
After a thorough review of the record, the decision of the family court, and the briefs of the parties, we find the family courts order provides a detailed statement of the facts and shows the family court judge carefully considered and correctly applied the relevant law in this case.  The family courts order is hereby affirmed and reprinted as part of the opinion of this court. 
THE ORDER OF THE HONORABLE A. E. GENE MOREHEAD, III:
This matter came before me for a final hearing pursuant to a Summons and Complaint filed by the Plaintiff in June, 2002. Both parties were present with their respective attorneys, and the following are the salient facts.
HISTORY
The Plaintiff/wife and the Defendant/husband were married on November 14, 1981, and have resided in Richland County throughout their marriage. No children were born of the marriage; however, the wife was previously married and had custody of her nine-year-old son when the parties married. The wife was twenty-eight years old and the husband twenty-nine when they married. They separated after nineteen years of marriage in December of 2000 when the wife asked the husband to vacate the marital home. Prior to the parties marriage, the wife worked full time in the pathology lab at Baptist Medical Center but switched to part-time employment once married in order to spend more time at home. The husband, both prior to the marriage and up until the separation, worked in a family owned mobile home rental business. The family, closely held corporation owns a number of mobile homes on property owned by the husbands parents. The husband worked side-by-side with his father until his death in August shortly prior to the parties separation. The wife is presently fifty-one years of age, and the husband is fifty-three.
In June, 2002, approximately a year and a half after the parties separation, the wife filed an action seeking a divorce on one years continuous separation. Additionally, she sought alimony, an equitable distribution of marital assets and debts and attorneys fees. The husband was initially represented by James E. Holler and, pursuant to a request by the Plaintiff, Stanley G. Freeman was appointed his Guardian ad Litem. An Answer was filed setting up a basic general denial to the allegations.
The husband has had a history of medical problems including psychiatric care; and due to his actions both prior and subsequent to their separation, the Plaintiff requested a Guardian ad Litem be appointed. Mr. Holler was subsequently relieved as the husbands attorney, and the Guardian ad Litem, a close family friend, agreed to continue as both the husbands Guardian ad Litem and attorney, pro bono, with the consent of the wife and her attorney.
At the call of the case, the Court inquired from both parties as to the possibility of reconciliation and from their responses finds that there is no such possibility.
DIVORCE
The parties separated in December, 2000, and when the action was instituted in June of 2002, they had lived separate and apart for a year and a half without cohabitation. This is uncontradicted and duly corroborated. The Plaintiff/wife is entitled to a divorce on one years continuous separation without cohabitation.
ALIMONY
The Plaintiff/wife sought alimony and argued that special circumstances existed for the Court to award lump sum alimony. The Defendant/husband does not have the capability of making a lump sum payment; and based on all of the testimony, the Court finds that this is not an appropriate case for an award of alimony. In considering the factors set forth in the alimony statute, the prerequisites are not present to award the wife alimony. She clearly has the capability of supporting herself and financially is in a much greater position than the husband.
From 1972 until the parties married in 1981, the wife worked full time at the Baptist Hospital. When the parties married, she switched to part-time employment based on a family decision. That decision made sense at the time. Since the husband was working in the family owned mobile home rental business, she could spend more time at home not only with her new husband but especially her nine-year-old son who remained with them for the next nine years. Contrary to the testimony of her Certified Public Accountant, Mark Hobbs, who indicated she was convinced to work only part-time, the Court finds that this was a family decision based on the circumstances that existed when the parties married. Shortly after the parties separated, not only has the wife continued her part-time employment at the hospital, but she is also receiving the salary that had been traditionally paid to the husband out of the family owned mobile home rental business.
Prior to the parties marriage, the husband worked with his father in the family mobile home rental business. That business was incorporated, and the husband has had an interest in the business since 1975. His father gifted to him forty (40%) percent of the corporate stock, retaining sixty (60%) percent. As the fathers health began to deteriorate, he turned more responsibilities over to the husband where eventually he was running the operation. The husband, in the last few years prior to the separation lost interest in the business and got more involved in hobbies and other interests. When his father died in August of 2000, the business was in deplorable condition due to the husbands lack of attention.
While educated with excellent handyman skills, the husband has basically relied on his family, especially his father, for all of his life. Both prior to and throughout the marriage, he has had numerous medical problems including psychiatric care. During the marriage, he had a lengthy bout with alcoholism requiring inpatient treatment; but he has been sober since January 28, 1988. The wife was there assisting him through this problem. With a family history of psychiatric problems, he has battled these problems throughout the marriage. He has been on most anti-depressants on the market. Presently he should be taking Zoloft but is not, stating that he cannot afford it. Likewise, he has had inpatient care for this problem, most recently after the separation from his wife and the death of his father when his sister took him for treatment. It was obvious that he was not recovering from his depression that began prior to his fathers death. He has previously received electric shock treatments for his illness. Since the separation, he has now developed arrhythmia and as recently as this year, has been diagnosed with diabetes.
As stated above, while educated and good with his hands, throughout his entire life he has depended on his family, especially his father, to meet his needs. The facts bear that out. When the parties married in 1981, the father allowed them to move into a home owned by him, and they have remained there their entire marriage. In 1989, they made improvements to that home when it was not even owned by them. The father loaned them the money for the improvements which they were to pay back over a period of ten years. The father subsequently canceled the last two years of payments. In the early 90s, the father gifted the home to his son. The father brought the son into the family business and eventually gifted to him forty (40%) percent of the corporate stock. The son was able to draw an annual income from the business by keeping the books, working with the renters, handling maintenance, etc. Eventually his income rose to Four Thousand ($4,000.00) Dollars a month or Forty-eight Thousand ($48,000.00) Dollars annually for the years prior to the separation. The Court believes the husband when he testified that his father had always been his safety net and had bailed him out over the years. They worked together, side-by-side, for over fifteen years; and when the husband saw that his fathers health was deteriorating, prior to his death in 2000, his depression and psychiatric problems crept back into his life to the point that when his father died in August, the fear and responsibility paralyzed him to the standpoint that he could not function.
Having battled the husbands alcoholic problem in the 80s, the wife attempted to deal with this situation in the late 90s when the husband would be gone for days at a time and would not be there to help with the business when his fathers health was declining. She finally reached her limit; and in December of 2000, asked him to leave, which he did. The husbands sister, Alice Powell Rosen, who lives in Hampton, Virginia, had been coming to South Carolina frequently prior to her fathers death and noticed how the family owned mobile home rental business was deteriorating primarily due to the husbands lack of attention. Upon their fathers death, his sixty (60%) percent of the corporate stock went to their surviving mother. Those shares are presently in an intervivos revocable trust with Alice Powell Rosen acting as Trustee. She has basically taken over the business, hired a managing firm to get the business back on its feet, and after the year 2000 stopped paying her brother the Four Thousand ($4,000.00) Dollars a month from the business. Since she lives in Virginia, she, in turn, hired the Plaintiff/wife to be her eyes and ears in South Carolina; and beginning in January of 2001, started paying her the Four Thousand ($4,000.00) Dollars a month to act as Treasurer writing checks, doing bookwork, etc. That Forty-eight Thousand ($48,000.00) Dollar salary was paid to the wife for the years 2001 and 2002 in addition to her part-time salary at the hospital bringing her annual income to over Seventy Thousand ($70,000.00) Dollars. In 2003 that monthly salary was reduced from Four Thousand ($4,000.00) Dollars to Three Thousand ($3,000.00) Dollars where she now receives Thirty-six Thousand ($36,000.00) Dollars annually in addition to her part-time employment at the hospital. Since the separation in December of 2000 and without his monthly income from the family business, the Defendant/husband has relied on friends for assistance and, for approximately two years, sold a Cobra kit car and motorcycles for self-preservation in addition to doing odd jobs where he has earned Four Hundred ($400.00) to Five Hundred ($500.00) Dollars a month.
While the parties were married nineteen years prior to their separation, the wifes earning capability has been and probably always will be higher than the husbands. Looking at plaintiffs Exhibit #27, the Social Security records indicate for the past fourteen years since 1990 she has earned in excess of Twenty Thousand ($20,000.00) Dollars annually working part-time at the hospital. She testified that presently there is a hiring freeze at the Baptist Hospital for full time employment, but with the other medical facilities in the Columbia area, nothing would preclude her from returning to full time employment. At present she does not have to consider that option with the additional income from the family owned mobile home rental business. In the year 2000 when the parties separated, through her part-time employment, she earned in excess of Twenty-nine Thousand ($29,000.00) Dollars. Since the separation and upon receiving the Forty-eight Thousand ($48,000.00) Dollars from the family owned business, she has grossed in excess of Seventy Thousand ($70,000.00) Dollars. Even though it was reduced to Thirty-six Thousand ($36,000.00) Dollars in 2003 and continues at that rate, she is earning Sixty-five ($65,000.00) to Seventy Thousand ($70,000.00) Dollars annually. With these two employments, she has the ability to support herself. Her sister-in-law who is presently the Trustee for sixty (60%) percent of the corporate stock indicates that she will continue Plaintiff/wife in that employment but does not know what will happen when her mother dies. At that time, Plaintiff/wife may be in a position to return full time to a hospital at a salary that will be higher than any annual salary the husband has ever made throughout the marriage.
In addition to their earning capabilities, their physical and emotional conditions are quite the opposite. The wife is in excellent health and on no medication. The husband has battled several medical conditions. While it is commendable that he has not had a drink since January of 1988, that is an ongoing struggle. There was a period of time when he was addicted to amphetamines, and he has to constantly battle that addiction. His major problems now are psychiatric, depression. He presently does not have the financial capability to seek appropriate medical attention.
The parties standard of living has not been elaborate with most extras being provided through the generosity of the husbands father who died in August of 2000. Their anticipated expenses are normal, and while there is no evidence that the wife has any outside or non-marital properties, the husband could inherit assets from his parents estate and a trust depending on the circumstances that exist at the time of his mothers death. That property could go as high as Five Hundred Eighty-five Thousand ($585,000.O0) Dollars but could be as little as One Hundred Forty-seven Thousand ($147,000.00) Dollars.
Based on those factors, the wifes request for alimony is denied.
EQUITABLE DISTRIBUTION
The following are the marital assets that are subject to the equitable distribution statute.

 
 Wife’s checking, savings and CD
 $20,000
 
 
 Wife’s hospital retirement
 46,613
 
 
 Former marital home (705 Percival Road) – equity 
 0
 
 
 Wife’s 1999 Yukon
 4,900
 
 
 Husband’s Ford pickup
 4,400
 
 
 Honda Gold Wing
 500
 
 
 Furniture and household goods in former marital home
 5,000
 
 
 Three pool tables and unsold motorcycles at the time the action was instituted in June of 2002
 
 5,000
 
 
 Cash value of two life insurance policies 
 2,066
 
 
 
           TOTAL 
 88,479
 

An explanation concerning these assets, their respective values, and what is marital and non-marital is necessary. The undisputed evidence shows that the wife had One Thousand Five Hundred ($1,500.00) Dollars in her checking account, approximately Five Thousand Five Hundred ($5,500.00) Dollars in her savings account and Thirteen Thousand ($13,000.00) Dollars in a Certificate of Deposit for a total of Twenty Thousand ($20,000.00) Dollars. The husband had no accounts. While the wifes present hospital retirement is in excess of Fifty-six Thousand ($56,000.00) Dollars, Plaintiffs Exhibit #28 shows that, at a point closest to the institution of this action, Forty-six Thousand Six Hundred Thirteen ($46,613.00) Dollars was in the account.
The former marital home at 705 Percival Road should be included in the marital estate due to transmutation of this property which was gifted to the husband by his father. At the time the action was instituted, the outstanding equity line was equal to its fair market value; therefore, there was no equity in the property. When the parties married in 1981, the husbands father allowed them to move into this property where they remained until they separated in December of 2000. While the property was not owned by them, they doubled the size of the home in 1989 by adding an addition. They borrowed money from the husbands father to pay for that addition agreeing to pay him back in monthly installments for the next ten years. Thus the loan would be satisfied in 1999. From joint incomes, they repaid the husbands father for eight years. In 1998, again through the fathers generosity, he canceled the last two years on the note at Ten Thousand ($10,000.00) Dollars per year for a total of Twenty Thousand ($20,000.00) Dollars.
When the Defendants father, through assistance of legal counsel, realized that upon his death he would have a taxable estate, he set up various testamentary trusts and began gifting property. Over a period of three years as shown by plaintiffs Exhibits #2, #3 and #4, he gifted a thirty-three and a third interest in the property to his son in the years 1990, 1991 and 1992 to avoid a gift tax. Upon the fathers death, a one-tenth interest was deeded from his estate in 2002. While repairs were done to the property prior to their owning it, from 1990 until 1998 through joint funds, they repaid the husbands father for those improvements. Additionally, while the property was received free and clear of any mortgage, the parties in 1992, as shown by Plaintiffs Exhibit #6, took out an equity line securing it with a mortgage with a maximum credit of Fifty-Six Thousand ($56,000.00) Dollars. Both parties were obligated under the equity line. Over the years, the husband has borrowed money against that equity line and as shown by the accountants Exhibit #32 (tab 8) as far back as May of 1997, the equity line was over Fifty-three Thousand ($53,000.00) Dollars. At the time of their separation in December of 2000, it was still over Fifty-three Thousand ($53,000.00) Dollars; and at the time the action was instituted in June of 2002, it was in excess of Fifty-five Thousand ($55,000.00) Dollars. On two occasions, in July of 2000 prior to the separation and in April of 2002 prior to the institution of this action, the outstanding balance exceeded Fifty-Six Thousand ($56,000.00) Dollars which was the maximum credit line. While the tax assessors office as shown by Plaintiffs Exhibit #1 reflects the value of this property at Forty-one Thousand Four Hundred ($41,400.00) Dollars, the Court finds based on the equity line that was issued, realizing that lending institutions normally do not authorize a loan for more than the value of the property, that the fair market value of the former marital home was Fifty-six Thousand ($56,000.00) Dollars with a secured equity line balance at the time the action was instituted of Fifty-six Thousand ($56,000.00) Dollars giving it zero (0) equity. While the property was gifted solely to the husband by his father over three years, the parties have used this as their marital home for the entire nineteen years. After being deeded the property, beginning in 1990, for seven years with joint funds they repaid the father for the additions that were added until he canceled the last two years. From 1992 when the equity line was taken out, all payments on that equity line have been made with marital funds. When the parties separated in December of 2000 and the husband stopped receiving his monthly salary from the family owned business and, in turn, it went to the Plaintiff, she has been the only person to make payments on the equity line. This includes from the time of their separation until the action was instituted in July of 2002 and also up until the time of this hearing. The equity line has now been reduced to Forty-four Thousand Seven Hundred ($44,700.00) Dollars. Under supporting case law, transmutation has occurred to include the former marital home into the marital estate.
The wifes Yukon has a fair market value of Seven Thousand ($7,000.00) Dollars with an outstanding lien of Two Thousand One Hundred ($2,100.00) Dollars giving its present value at Four Thousand Nine Hundred ($4,900.00) Dollars. The husband indicated the only things he had left were a Ford pickup and a Honda Gold Wing motorcycle worth approximately Five Hundred ($500.00) Dollars. The Court finds that the Ford pickup and the Honda Gold Wing equal the fair market value of the wifes Yukon and values the pickup at Four Thousand Four Hundred ($4,400.00) Dollars. The wife testified that the personal furnishings in the home were worth approximately Four Thousand ($4,000.00) Dollars while her financial declaration reflects Five Thousand ($5,000.00) Dollars. The Court finds Five Thousand ($5,000.00) Dollars is correct. While the husband testified that he thought they separated in 2001, the Court finds they separated in 2000. He did indicate that he owned several pool tables prior to their separation. It is clear that throughout their marriage the husband would purchase motorcycles, fix them up, resale them; and at the time they separated, owned numerous motorcycles. In addition, he had purchased a Cobra kit car for approximately Twenty-one Thousand ($21,000.00) Dollars. Both the husband and wife testified that he sold that Cobra kit car in the year 2000. He also acknowledged selling some motorcycles in the year 2000 and some in 2001 for self-preservation. He indicated including the Cobra car, which was sold for Eighteen Thousand ($18,000.00) Dollars, he made anywhere from Twenty ($20,000.00) to Twenty-­five Thousand ($25,000.00) Dollars during those two years and used those funds to live on since he was receiving no income. The Cobra kit car and most of the motorcycles were sold prior to the institution of this action in June of 2002 and, therefore, were not in existence at the time of the action and would not be included in the marital estate. There is some question as to whether all of the motorcycles were sold prior to the institution of the action, and the Court finds that if any were still available and sold subsequently along with the pool tables, they would constitute a value of about Five Thousand ($5,000.00) Dollars equal to the household furnishings in the former marital home.
The husband does have two life insurance policies with Jefferson Pilot which were taken out during the marriage. One policy was purchased in 1987 and has a face value of Ninety-five Thousand ($95,000.00) Dollars. A loan of Four Thousand Five Hundred Eighty-two ($4,582.00) Dollars has been placed on that policy with a cash value of One Thousand Two Hundred Twenty-two ($1,222.00) Dollars. The second policy with Jefferson Pilot was purchased in December of 1990 with a face value of One Hundred Thousand ($100,000.00) Dollars. There is an outstanding loan of Nine Thousand Four Hundred Eighty-eight ($9,488.00) Dollars with a current cash value of Eight Hundred Forty-four ($844.00) Dollars, leaving the total cash value at Two Thousand Sixty-six ($2,066.00) Dollars.
Several assets are not marital property. It is undisputed that the husband has a forty (40%) percent interest in the stock of the family corporation. That stock has not been transmuted to be included in the marital estate. The wifes financial declaration values that stock at One Hundred Thousand ($100,000.00) Dollars, but there is no evidence to justify that evaluation. The husbands financial declaration values the stock at Twenty-six Thousand ($26,000.00) Dollars but, likewise, there is no evidence to justify that evaluation. It is undisputed that the husband had been working with his father in this family business and had an interest in the business since 1975. It is also undisputed that his father gifted to him forty (40%) percent of the stock retaining sixty (60%) percent until his death when his stock passed to his widow. The husbands stock has remained a separate asset and has not been transmuted. While the income derived by the husband through his employment was placed back into the marriage, the stock itself has never been transmuted into the marital estate and has remained separate. It was not until after the parties separated that the wife became employed with the family owned business, and she has been adequately compensated for her services through that employment. The forty (40%) percent interest in the corporation will remain with the husband. Additionally, it is undisputed that the husband had no checking or savings account. Throughout the marriage when he received his monthly checks from working in the family business, he would turn them over to the wife who paid all of the family bills. The husband used a One Thousand ($1,000.00) Dollars lease check and the equity line to meet his needs and expenses through the marriage. The husband is due to inherit some real estate through his fathers estate if he should survive his mother. He has a vested interest in certain property and a contingency interest in others. On pages 7 and 8 of his fathers Will as is shown on Plaintiffs Exhibit #11, he is subject to inheriting approximately six acres on one side of Percival Road if that property is being rented to the family corporation. That property has a value of approximately Four Hundred Thirty-seven Thousand Six Hundred Fifty ($437,650.00) Dollars. Under sub-paragraph (b), he will also inherit property surrounding the former marital residence on the other side of Percival Road with a value of approximately One Hundred Forty-six Thousand Seven Hundred Fifty ($146,750.00) Dollars. Of course, the Court does not know whether he will survive his mother and, likewise, does not know the length and term of the lease or rental agreement to the corporation. None of these assets would be included in the marital estate.
Having determined that the marital estate has a value of Eighty-eight Thousand Four Hundred Seventy-nine ($88,479.00) Dollars, pursuant to the statute, the Court must determine the parties respective interests. They were married for nineteen years prior to their separation. Both parties contributed both directly and indirectly in obtaining these assets. Throughout the marriage, the wife worked part-time at the hospital providing direct income while the husband worked in the family business providing direct income. Additionally, through the husbands family, they received the former marital home which was transmuted into the marital estate and have received numerous gifts through the generosity of the husbands father including debt cancellations. Both parties provided indirect contributions with the wife cooking and cleaning and doing gardening and landscaping around the property. Likewise, the husband did landscaping work, added a patio and maintained the grounds. Due to the length of the marriage and their direct and indirect contributions, the Court finds that the marital estate should be divided equally with each party receiving Forty-four Thousand Two Hundred Thirty-nine and 50/100 ($44,239.50) Dollars. The plaintiff/wife shall receive the following.

 
 Her checking, savings and CD
 $20,000
 
 
 Her hospital retirement
 46,613
 
 
 Former marital home (705 Percival Road) – equity
 0
 
 
 Her 1999 Yukon
 4,900
 
 
 Her household goods and personal property 
 5,000
 
 
 Cash value of the two life insurance policies 
 2,066
 
 
 
 TOTAL 
 $78,579
 

The Defendant/husband shall receive the following:

 
 His Ford pickup
 4,400
 
 
 Honda Gold Wing  
 500
 
 
 Three pool tables and unsold motorcycles at the time the action was instituted in June of 2002
 
 
 5,000
 
 
 
 TOTAL
 $9,900
 

In order to balance the equal division, the wife will owe the husband Thirty-four Thousand Three Hundred Thirty-nine and 50/100 ($34,339.50) Dollars. That contribution by the wife will be offset by the husbands contribution to her legal fees and costs.
The Court finds it appropriate to give most of the assets to the wife in that presently she is the only one employed having the capability of maintaining those assets including the two life insurance policies. Testimony was that the premiums may become too expensive in future years such as in 2026 on the first policy and 2010 on the second policy. The wife has continued to pay the premiums on these policies, keeping them in effect throughout the separation and this litigation, and is the one most likely to keep the premiums current. The husband had no objection in allowing her to retain those policies, so she can keep them in effect or cash them in as desired. By receiving the former marital home with no equity, the wife will be responsible for the equity line and shall hold the husband harmless.
ATTORNEYS FEES
The plaintiff sought reimbursement for her legal fees and costs for the necessity of this action. James McLaren testified in support of the legal fees and costs amounting to Fifty-seven Thousand Two Hundred Ninety-eight ($57,298.00) Dollars. Mr. Warner spent approximately one-hundred eight hours on the file at Four Hundred ($400.00) Dollars an hour accounting for fees in excess of Forty-three Thousand ($43,000.00) Dollars. He had clerks involved for thirty-five hours at Seventy-five ($75.00) Dollars an hour and paralegals involved at One Hundred ($100.00) Dollars an hour. His costs and expenses were Six Thousand Two Hundred Ninety-six ($6,296.00) Dollars, the bulk of which was paid initially to the Certified Public Accountant. That accountant testified and put in an exhibit, a lengthy notebook encompassing eleven separate tabs, which the Court reviewed in detail. His testimony was that through the weekend prior to the trial, his outstanding bill was in the neighborhood of Five Thousand Six Hundred ($5,600.00) Dollars to Five Thousand Seven Hundred ($5,700.00) Dollars but for the necessity of testifying it would increase to between Six Thousand ($6,000.00) Dollars and Six Thousand Five Hundred ($6,500.001 Dollars.
In considering an award of attorneys fees, the Court has to look at factors set out in the Glasscock case and other supporting cases. In considering those factors, the Court has to conclude that some of the expenses were excessive and do not fit comfortably into those factors. As an example, some of the spreadsheets submitted by the accountant were of little use to the Court. Tab 11 in his exhibit shows that if the Defendant/husband had saved Seven Thousand Two Hundred ($7,200.00) Dollars per year, he would have had substantial savings when the parties separated. Of course, there was no comparable showing of what the Plaintiff/wife would have had if she had had an annual savings plan. Her plan could have potentially reduced what the CPA contends she will need in the future as set forth under tab 9. There is probably not a married couple in South Carolina who, in 20/20 hind sight, could not look back at savings they would have accumulated during their marriage if they had saved X amount of dollars. Other considerations are that Mr. Warners hourly rate of Four Hundred ($400.00) Dollars is not the ongoing rate in the area. It is higher than the average. Mr. Warner summed up the case during his cross-examination of the Defendant/husband in that after a nineteen year marriage and this litigation of over two years, the parties have ended up with a house whose equity line is maxed out and a couple of automobiles, and that is the entire marital estate. Submitting a bill for fees and costs in excess of Fifty-seven Thousand ($57,000.00) Dollars is too high for full reimbursement.
Having found that these fees and expenses cannot be fully reimbursed, had the Plaintiff/wifes attorney not pursued discovery vigorously and prepared her case by entering thirty-two separate exhibits, the Court would have had no information whatsoever on which to base its decision because the Defendant/husband provided little or nothing to the Court. He kept contending that due to his medical problems and psychiatric needs, both his long-term and short-term memory have been greatly effected. Taking that factor into prominent consideration, the Court does find that the Defendant/husband should make a substantial monetary contribution toward the legal fees and costs incurred by the Plaintiff/wife and finds that a contribution of Thirty-five Thousand ($35,000.00) Dollars would be fair and equitable. This is in excess of sixty-one (61%) percent of her total fees and costs, and due to the Defendants lack of cooperation, that payment is appropriate. Since the Plaintiff/wife was ordered to pay the Defendant/husband Thirty-four Thousand Three Hundred Thirty-nine and 50/100 ($34,339.50) Dollars to balance the equitable distribution and ensure that each party received an equal distribution, that payment will be offset by the Defendant/husbands requirement to contribute Thirty-five Thousand ($35,000.00) Dollars toward her legal fees and costs. In turn, the Plaintiff wife will be responsible for paying those fees to her attorney in lieu of and as an offset to the equitable distribution; and the balance of Six Hundred Sixty and 50/100 ($660.50) Dollars will be paid by the Defendant/husband directly to the Plaintiffs attorney within forty-five days of the date of the order. Accordingly,
IT IS, HEREBY, ORDERED AND DECREED that the Plaintiff is granted a divorce, a vinculo matrimonii, from the Defendant on the ground of having lived separate and apart continuously without cohabitation for over one year.
IT IS FURTHER ORDERED that the Plaintiffs request for alimony is denied.
IT IS FURTHER ORDERED that the parties shall equitably divide the marital estate as discussed hereinabove. Both parties shall execute any documents necessary to carry out the Courts decision.
IT IS FURTHER ORDERED that the Defendant/husband shall pay the Plaintiffs attorney Six Hundred Sixty and 50/100 ($660.50) Dollars within forty-five days of the date of this order, and the Plaintiff will be responsible for the balance of her fees which considered the offset in her equitable distribution. 
Based upon the aforementioned, the order of the family court is
AFFIRMED.
GOOLSBY, ANDERSON, and SHORT, JJ. concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.